1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    RAYMOND D.,[1]                        Case No.  19-cv-07594-TSH
8                  Plaintiff,
9         v.                              **ORDER RE: CROSS-MOTIONS FOR
                                          SUMMARY JUDGMENT**
10   COMMISSIONER OF SOCIAL
     SECURITY,                            Re: Dkt. Nos. 20, 29
11
                  Defendant.
12

### I.    INTRODUCTION

Plaintiff Raymond D. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a final decision of Defendant Andrew Saul, Commissioner of Social Security, denying

his claim for disability benefits.  Pending before the Court are the parties' cross-motions for

summary judgment.  ECF Nos. 20 (Pl.'s Mot.), 29 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-

5, the motions have been submitted without oral argument.  Having reviewed the parties'

positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby

**GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion and **REMANDS** this case for

further proceedings consistent with this order.

### II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 42 years old.  AR 192.  The records show a history of ADHD as a child and

special education classes for a math disability.  AR 890.  He graduated from high school and has

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case Management of the Judicial
Conference of the United States.

United States District Court
Northern District of California

United States District Court
Northern District of California

previous experience as a maintenance worker at a shopping center, restaurant cook, and grocery store courtesy clerk.  AR 43-48, 255.

**B.     Medical Evidence**

    **1.      San Quentin State Prison**

Plaintiff received mental health treatment from March 7 to April 19, 2014 while incarcerated at San Quentin State Prison.  AR 307-65.  He was diagnosed with mood disorder NOS and polysubstance dependence and prescribed individual therapy and medication management.  AR 338-39.  Plaintiff reported a history of three significant traumatic head injuries that resulted in loss of consciousness and/or coma.  AR 338, 348.  He was housed in administrative segregation and told clinicians: "I'm happy in the hole."  AR 346-47.  He experienced anxiety, sleep difficulties and cognitive dissonance due to worrying about being released.  AR 355, 357-58.

    **2.      Washington Hospital**

Plaintiff sought treatment at Washington Hospital for cellulitis of his right hand on March 27, 2016.  AR 377.  Clinicians noted he had a normal mood and affect, no sensory deficit, and was alert and oriented to person, place and time.  AR 381.

    **3.      Santa Rita Jail**

During Plaintiff's incarceration at Santa Rita Jail, clinicians noted a history of suicidal ideation and attempt.  AR 748.  On April 22, 2015, Raymond Carlson, LCSW, diagnosed Plaintiff with mood disorder and polysubstance dependence.  AR 820.  On April 29, Khenu Singh, M.D., diagnosed anxiety disorder NOS, polysubstance dependence, and gave Plaintiff rule-out diagnoses for post-traumatic stress disorder and attention deficit hyperactivity disorder.  AR 823.  Plaintiff was prescribed fluoxetine (Prozac), an antidepressant.  AR 822.

On July 21, 2016, Mcheko Graves-Matthews noted depressive disorder NOS and likely polysubstance dependence.  AR 830.  Plaintiff was again prescribed fluoxetine.  AR 829.

On March 1, 2017, Plaintiff reported feeling down, crying a lot, having mood swings, difficulty sleeping, feeling very anxious, and changes in his appetite.  AR 812.  Farah Khan, M.D. noted he had poor grooming, soft and slow speech, logical thought processes, calm and

United States District Court
Northern District of California

cooperative behavior, fully oriented, depressed mood, constricted affect, no auditory or visual hallucinations, no delusions, and limited insight and judgment. AR 813. On March 29 and May 30, Plaintiff's mental status was notable for poor grooming, soft and slow speech, a constricted affect, calm and cooperative behavior, fully oriented, logical thought process, "good" mood, no auditory or visual hallucinations, no delusions, and limited insight and judgment. AR 815, 817. Dr. Khan diagnosed bipolar disorder and cannabis, opioid, and stimulant-related disorder. AR 813, 815, 817. Plaintiff was prescribed fluoxetine and olanzapine (Zyprexa), an antipsychotic. *Id.* (all).

On March 13, 2017, a test of Plaintiff's vision showed he had 20/20 vision in his right eye and no light perception in his left eye. AR 633.

On June 21, 2017, Elizabeth Walser, M.S.W., Psy.D., supervised by Lesleigh Franklin, Ph.D., performed a psychological evaluation. AR 890-900. Drs. Walser and Franklin reviewed Plaintiff's records and performed seven testing procedures – a clinical interview, mental status examination, Quality of Life Rating Scale, Wechsler Adult Intelligence Scale, Wide Range Assessment of Memory and Learning, Amen Brain Checklist, and Behavior Rating Inventory of Executive Function. AR 890. Plaintiff reported that he had not used any substances since he went to jail in January 2017, and his symptoms had persisted despite his sobriety. AR 890-91. He was diagnosed with ADHD as a child and placed in special education for a mathematics disability. AR 890. He was repeatedly disciplined for fighting in high school and middle school. AR 891. He was arrested about 20 times or more as a juvenile. *Id.*

At the time of the evaluation, Plaintiff was housed in administrative segregation and had repeatedly been placed there due to mental health concerns and former gang affiliations. AR 891-92. His brother was his cellmate at the time of the evaluation. AR 892. He denied using drugs and there was no evidence of substance use. AR 893.

Plaintiff rated his overall quality of life as satisfactory when he is incarcerated because he is fed, housed with his brother, medicated, able to stay clean, and protected from others. AR 892. Dr. Walser explained that "[t]hese conditions feel good to him despite the lack of freedom; therefore he rated his overall quality of life as 'satisfactory.'" *Id.*

3

Plaintiff presented with a somewhat arrogant demeanor, flat expression, intermittent eye contact, a depressed mood, irritability, anxious, and a restricted affect.  AR 893.  The examination also showed adequate grooming, adequate ability to pay attention with structure, below average work pace, long term memory gaps and difficulties with working memory and adequate effort in testing.  *Id.*  Plaintiff was cooperative and spoke in normal tone with logical thought process, low insight and marginal judgment, and tended toward some "unusual thinking."  *Id.*  Drs. Franklin and Walser stated that the evaluation was a good representation of Plaintiff's psychological functioning at the time.  *Id.*  They noted he cooperated and put forth adequate effort.  AR 898.

Plaintiff's composite scores for perceptual reasoning and working memory on the Wechsler Adult Intelligence Scale were far below average.  AR 893, 895.  He worked more slowly on tasks requiring careful attention and timed out on several problems.  AR 895.  On the Wide Range Assessment of Memory and Learning assessment, Plaintiff's composite score for attention and concentration was far below average.  AR 894.  The Behavior Rating Inventory of Executive Function test indicated he has significant difficulty with inhibition, emotional control, working memory, and monitoring.  *Id.*  The Amen test indicated he has significant problems with depression, attention and impulse control, anger, and anxiety.  *Id.*  Plaintiff had average range in his general ability index, average range for language, low average verbal memory, and clinical significant range for attention.  AR 895-96.

Drs. Walser and Franklin noted that Plaintiff has had longstanding problems following rules and managing impulses, and his ADHD had a serious impact on his development.  AR 896.  He exhibited an irritable depression and bad temper and reported feeling moody, unhappy, irritable, pessimistic, and having difficulty concentrating.  *Id.*  They noted that his poor decision-making ability led to his conviction for a sex offense, and that he believes his status as a sex offender has unfairly ruined his life.  *Id.*

Drs. Franklin and Walser diagnosed Plaintiff with bipolar disorder; ADHD combined type; antisocial personality disorder; amphetamine use disorder, severe, in early remission in a controlled environment; and cocaine use disorder in early remission in a controlled environment.  AR 897.  They determined his narcissistic and antisocial tendencies make it hard for him to trust

United States District Court
Northern District of California

people and get the help he needs in the community.  AR 898.  They also determined he would have extreme impairment in his ability to accept instructions and respond to criticism from supervisors, as he does not take criticism well and thinks he knows best.  AR 898-99.

Drs. Franklin and Walser determined Plaintiff would have marked impairment in his ability to maintain attention and concentration for two-hour segments, get along and work with others, interact with the public, respond to changes in a routine work setting and deal with normal work stressors, complete a normal workday and workweek without interruptions from psychological symptoms, and maintain regular attendance and be punctual.  AR 899.  They determined he would have mild impairment in his ability to understand, remember, and carry out very short and simple instructions.  *Id.*

### 4.  Lifelong Trust Clinic

On September 6, 2017, Plaintiff was seen by three clinicians at the Lifelong Trust Clinic.  AR 918-29.

Kari Jennings-Parriott, LCSW, saw Plaintiff for an individual psychotherapy session.  She noted Plaintiff was easily distracted and exhibited some difficulty answering complex questions.  AR 918.  Plaintiff reported that he does not leave his home without his brother or roommate accompanying him and he becomes anxious and panics when out in the community alone.  *Id.*  He reported being sober since his release from jail.  *Id.*  Plaintiff's mental status examination was notable for his normal appearance, cooperative behavior, depressed and anxious mood, constricted affect, concrete thought process, ruminating/preoccupied/depressed thought content, impaired attention and concentration, minimal insight, tense posture, intermittent eye contact, slowed activity, lisp, and impaired cognition.  AR 918-19.  Jennings-Parriott diagnosed major depressive disorder, recurrent, moderate.  *Id.*

Kevin Lagor, N.P., saw Plaintiff for an office visit.  AR 921.  He checked Plaintiff's vital signs and pulse oximetry and conducted a physical exam.  AR 922.  The physical exam resulted in normal findings for numerous body systems: constitutional, eyes, ears, nasopharynx, neck, lymph detail, respiratory, vascular, abdomen, musculoskeletal, extremity, neurological, and psychiatric.  AR 922-23.  The psychiatric findings indicated that Plaintiff was oriented to time, place, person,

United States District Court
Northern District of California

and situation; he had an appropriate mood and affect; and he had normal insight and judgment.

AR 923. Lagor diagnosed a mental and behavioral problem, prescribed fluoxetine and olanzapine, and recommended Plaintiff follow up with behavioral health. *Id.*

Nurse Leslie Stavig noted that Plaintiff reported feeling safe in his housing situation with his brother and family and that he was not looking for housing. AR 925-26. His activities included "Rolled blade" and cooking at home. AR 925. Plaintiff reported that he kept a "fairly good diet." *Id.*

### 5. Tri City Health Center

On July 15, 2014, Plaintiff sought treatment at Tri City Health Center for depression and arm pain. AR 939. He reported symptoms including anxious and fearful thoughts, depressed mood, difficulty concentrating, difficulty falling asleep, diminished interest or pleasure, excessive worry, hallucinations, poor judgment, racing thoughts, and restlessness. *Id.* Susan Doughty, N.P., diagnosed Plaintiff with depression and paranoid type schizophreniam and noted poor insight, full orientation, and normal memory. AR 941. Doughty gave Plaintiff the phone number to obtain a referral for mental health treatment. AR 941-42. Plaintiff was prescribed fluoxetine, acetaminophen, and ibuprofen. AR 938, 940.

On February 8, 2018, Plaintiff was seen for a diabetes check and reported he had been sober for eight months and attended Narcotics Anonymous meetings three times a week. AR 986.

On February 16, 2018, Plaintiff was seen by Hilary Baldocchi, N.P., and diagnosed with bipolar disorder with psychotic features; diabetes with hyperglycemia; hyperlipidemia; polycythemia; meth use disorder, severe, in early remission; opioid use disorder, severe, in early remission; and chronic hepatitis C without hepatic coma. AR 981-85. Baldocchi noted he was stable on his prescribed medications, olanzapine and fluoxetine. AR 984. At a follow-up diabetes check on March 23, Baldocchi noted that Plaintiff remained sober and was attending NA meetings 2-3 times a week. AR 972-76.

On May 11, 2018, Plaintiff was seen for a diabetes checkup and follow-up of chronic conditions. AR 954. Satyasree Konda, M.D., performed a physical exam with ten components, which was notable for an abnormal diabetic foot screen with nail onycholysis. AR 957-58. Dr.

United States District Court
Northern District of California

Konda's findings included a notation that Plaintiff was oriented to time, place, person and situation; exhibited an appropriate mood and affect; and had normal insight and judgment.  AR 958.

On May 22, 2018, Alycia Chen, DPM, performed a diabetic foot exam and diagnosed Plaintiff with diabetic polyneuropathy.  AR 951-53.

A medication summary printed on June 6, 2018, included the following medications: fluoxetine; olanzapine; metformin; fenofibrate, atorvastatin; and Basaglar (insulin).  AR 989.

**6.      State Agency Consultants**

**a.      Christmas Covell, Ph.D.**

State Agency Consultant Christmas Covell, Ph.D., reviewed the records on July 25, 2017 at the initial review level.  AR 89-95.  Dr. Covell considered Listings 12.04, 12.08 and 12.11.[2] AR 89.  Dr. Covell concluded that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  AR 90.  Dr. Covell indicated Plaintiff was not limited in his ability to understand or remember and carry out simple and short instructions, but he was moderately limited in his ability to do so with complex or detailed instructions.  AR 92.

Dr. Covell found moderate impairment in Plaintiff's ability to maintain attention and concentration for extended periods, complete a normal workday and workweek and perform at a consistent pace, accept instructions and respond to criticism from supervisors, respond to changes in a routine work setting, set goals, and make plans independently of others.  AR 92-93.  Dr. Covell concluded that Plaintiff could maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness but would do best with routine, superficial contact with others in the workplace.  AR 93.

Dr. Covell concluded that Plaintiff can adapt to a routine work setting and follow work-related goals and plans set by a supervisor; can travel; and can recognize and respond to typical workplace hazards.  *Id.*  Dr. Covell concluded that Plaintiff is limited to unskilled work.  AR 95.

---

[2] As discussed below, the Listing of Impairments describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  20 C.F.R. § 404.1525(a).

United States District Court
Northern District of California

### b.   Dan Funkenstein, M.D.

State Agency Consultant Dan Funkenstein, M.D., reviewed Plaintiff's records on September 20, 2017 at the reconsideration level and affirmed the initial denial.  AR 105-10.  Dr. Funkenstein considered Listings 12.04, 12.08 and 12.11.  AR 106-07.

Dr. Funkenstein found Plaintiff has moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing himself; maintaining attention and concentration for extended periods; completing a normal workday and workweek and performing at a consistent pace; accepting instructions and responding to criticism from supervisors; responding to changes in a routine work setting; and setting goals or making plans independently.  AR 108-10.  He found Plaintiff could understand and recall very short, simple instruction, and work instructions and procedures, but would have difficulty with complex, detailed instructions.  AR 108.

Dr. Funkenstein concluded that, although "CPP w/ wane occ w/Y sxs[,]" Plaintiff could consistently perform "SRT" for a typical workday and workweek, and that he would do best with routine, superficial contact with others in the workplace.  AR 109.  Dr. Funkenstein concluded that Plaintiff could adapt to a routine work setting and follow work-related goals and plans set by a supervisor; can travel; and can respond to typical workplace hazards.  AR 110.  He determined Plaintiff is limited to unskilled work.  AR 111.

### III.   SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On March 15, 2017, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on January 1, 2010.  AR 192-216.  On August 7, 2017, the agency denied Plaintiff's claim, finding he did not qualify for disability benefits.  AR 116-21.  Plaintiff subsequently filed a request for reconsideration, which was denied on September 25, 2017.  AR 122-31.  On September 28, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 132.  ALJ Debra Underwood conducted a hearing on June 21, 2018.  AR 36-79.  At the hearing, Plaintiff amended his onset date to March 15, 2017.  AR 77.  Plaintiff testified in person at the hearing and was represented by counsel, Stephanie Funt.  The ALJ also heard testimony from Vocational Expert Robin Scher.

United States District Court
Northern District of California

**A.      Plaintiff's Testimony**

Plaintiff testified that he last worked part-time doing maintenance at the Cabrillo shopping center in Fremont, performing tasks such as replacing ceiling tiles, cleaning stores, sweeping the parking lot, fixing pipes, and lifting boxes and trash cans.  AR 44-46.  His hours varied and there were some weeks when he did not work.  AR 44.  Plaintiff testified that he stood or walked for the entire workday and lifted 10-20 pounds.  AR 45-46.  He left that job because he was laid off after "[t]here was just no more work."  AR 46-47.  Before that, he worked as a cook at an Italian restaurant for about 1-2 weeks and at Safeway as a courtesy clerk for about two months, but he was terminated at the end of his probationary period.  AR 47-48.  Plaintiff testified that he cannot work because "I don't do good with big crowds. . . .  I just like to isolate myself."  AR 49.

Plaintiff went to Lifelong Medical Care in September 2017 and was prescribed anti-depressants, which he took for about 4-5 months.  AR 50.  He testified that he was not currently taking any mental health medications but was taking metformin and insulin for diabetes.  AR 54-55.  He had not used drugs for 11 months and testified that he noticed no difference in depression when he was using substances compared to when he was not.  AR 56, 58.  Plaintiff testified that he only sleeps for 3-4 hours a night and constantly wakes up throughout the night.  AR 66.  He becomes angry or irritable multiple times a day and "start[s] throwing things sometimes."  AR 67-68.

Plaintiff testified that he lives in a house in Newark, California with his brother and his adult nephew.  AR 41-42.  When his brother is not home or asleep, he keeps an eye on his nephew, who is disabled from a brain injury.  AR 59-60.  Plaintiff testified he makes sure his nephew does not leave the house, but he does not cook for him or do anything else to help with his care.  AR 60.  Plaintiff testified that he spends a typical day "just sitting in the front room" of his house, making sure his nephew does not wander off.  AR 60-61.  He sometimes makes breakfast for himself, keeps his room clean, and does his laundry, but he does not do yardwork or wash dishes.  When his brother asks him to do chores, it may take several months for him to complete the tasks.  AR 64-65.  He sometimes goes grocery shopping with his brother, but he wanders out of the store "because there [are] so many people in there."  AR 62.  Plaintiff testified that he

9

watches television or YouTube, but he has no hobbies.  AR 61, 63.

Plaintiff testified that his most recent period of incarceration ended on July 27, 2017 and, when incarcerated, he prefers to be in solitary confinement.  AR 43, 63.

**B.   Vocational Expert's Testimony**

The vocational expert first classified Plaintiff's past work under the Dictionary of Occupational Titles ("DOT"),[3] which she identified as janitor (DOT 382.664-010) and bagger (DOT 920.687-014).  AR 69.  The ALJ then posed two hypotheticals.  First, the ALJ asked the expert to consider someone "of the same age, education and work experience as the claimant. This individual was limited to simple, routine tasks with routine and superficial contact with others in the workplace, nothing beyond that in terms of – others in the workplace.  Would that person be able to perform the claimant's past work?"  AR 70.  The expert responded that the individual would not be able to work as a janitor but could work as a bagger.  *Id.*  The expert also testified that the hypothetical worker would also be able to perform three other jobs: (1) motor vehicle assembler (DOT 806.684-010); (2) day worker (DOT 919.687-010); and (3) cleaner II (DOT 919.687-014).  AR 70-71.  If the hypothetical worker was also limited to having no contact with the public and contact with coworkers for only one-third of the workday, they would still be able to perform these jobs.  AR 73-74.

For the second hypothetical, the ALJ asked the expert to consider the same individual but limited to occasionally performing simple routine tasks without interference from psychological or psychiatric symptoms.  AR 72.  The expert responded that such an individual would not be able to maintain employment.  *Id.*

Finally, the expert testified that "if somebody were not able to interact appropriately with their supervisor any amount of time, they would not probably be able to maintain employment."

---

[3] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d) (1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

AR 76.

**C.      ALJ's Decision and Plaintiff's Appeal**

On October 17, 2018, the ALJ issued an unfavorable decision finding Plaintiff was not disabled.  AR 18-35.  This decision became final when the Appeals Council declined to review it on September 19, 2019.  AR 1-6.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On May 28, 2020, Plaintiff filed the present Motion for Summary Judgment.  On September 29, 2020, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted).  It requires "more than a mere scintilla" but "less than a preponderance" of the evidence.  *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted).  However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error

1    does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks

2    omitted).  A court may not reverse an ALJ's decision because of a harmless error.  *Id.* at 1111

3    (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party

4    attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are

met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the

claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

enough that the claimant is unable to perform previous work and cannot, based on age, education,

and work experience "engage in any other kind of substantial gainful work which exists in the

national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-

step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

involves significant mental or physical activities."  *Ford*, 950 F.3d at 1148 (internal quotations and

citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful

activity since March 15, 2017.  AR 23.

At step two, the ALJ decides whether the claimant's impairment or combination of

impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148

(quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

*United States District Court*
*Northern District of California*

20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

impairments: bipolar disorder, attention deficit hyperactivity disorder (ADHD), cannabis use

disorder, opioid use disorder, and stimulant use disorder.  AR 23.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of

impairments that meets or equals an impairment in the Listing of Impairments (referred to as the

"listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

describe impairments that are considered "to be severe enough to prevent an individual from doing

any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified

medical criteria.  An impairment that manifests only some of those criteria, no matter how

severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

did not have an impairment or combination of impairments that meets the listings.  AR 24.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

determined Plaintiff has the RFC to perform a full range of work at all exertional levels with the

following nonexertional limitations: "The claimant is capable of performing simple, routine tasks,

with routine and superficial contact with others in the workplace."  AR 26.  Based on this RFC,

the ALJ determined Plaintiff could perform past relevant work as a courtesy clerk.  AR 29.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a

13

significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting

*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the

testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational

expert or specialist may offer expert opinion testimony in response to a hypothetical question

about whether a person with the physical and mental limitations imposed by the claimant's

medical impairment(s) can meet the demands of the claimant's previous work, either as the

claimant actually performed it or as generally performed in the national economy."  20 C.F.R. §

404.1560(b)(2).  An ALJ may also use "other resources," such as the DOT.  *Id.*  Here, the ALJ

determined Plaintiff can perform work as a motor vehicles assembler, day worker, and cleaner II.

AR 31.

## B.    Plaintiff's Arguments

Plaintiff raises five arguments: (1) the ALJ erred in evaluating the medical opinions; (2)

the ALJ erred by finding Plaintiff's testimony was not consistent with the evidence in the record;

(3) the ALJ erred by finding Plaintiff's impairments do not meet or equal a listing; (4) the ALJ

erred by finding Plaintiff had past relevant work at step four; and (5) the ALJ erred in determining

Plaintiff's RFC.

## C.    Medical Opinions

Plaintiff argues the ALJ erred by partially rejecting the opinion of examining psychologists

Lesleigh Franklin and Elizabeth Walser.  Pl.'s Mot. at 8-9.  The ALJ gave only partial weight to

their opinion, stating they assessed "only mild difficulties with the claimant's ability to complete

simple, routine tasks."  AR 29.  In determining Plaintiff's RFC, the ALJ incorporated their

assessment of "difficulties paying attention, getting along with the public and coworkers[.]"  *Id.*

---

[4] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461(1983).  The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Id.* at 461-62 (footnotes omitted).  The guidelines are commonly known as "the grids".  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

United States District Court
Northern District of California

1   However, the ALJ rejected their specific findings of marked difficulties completing a normal

2   workday and marked problems getting to work on a consistent basis, finding they did not explain

3   these limitations and they were inconsistent with Plaintiff's own testimony.  *Id.*

4         Plaintiff argues the ALJ failed to acknowledge their findings that he has extreme

5   impairment in his ability to accept instructions and respond to criticism from supervisors, and that

6   he has marked impairment in his ability to respond appropriately to changes in a routine work

7   setting and deal with normal work stressors.  Pl.'s Mot. at 9 (citing AR 899).

8         Plaintiff also argues the ALJ erred by assigning great weight to the non-examining state

9   agency consultants at initial and reconsideration, arguing she provided only a "generic boilerplate

10   statement," and fails to mention what their rationale was or which evidence supported their

11   determination.  *Id.* at 12-13.  Plaintiff further argues the opinions of the state agency consultants

12   do not warrant great weight because they are internally inconsistent and unsupported.  *Id.* at 14.

13         **1.      Legal Standard**

14         In this circuit, courts distinguish among the opinions of three types of physicians: (1)

15   treating physicians who have an established relationship with the claimant; (2) examining

16   physicians who see the claimant but do not treat him; and (3) non-examining physicians who

17   neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "As a

18   general rule, more weight should be given to the opinion of a treating source than to the opinion of

19   doctors who do not treat the claimant. . . .  [T]he Commissioner must provide clear and convincing

20   reasons for rejecting the uncontradicted opinion of an examining physician."  *Id.* at 830-31.

21         Even where a treating or examining physician's opinion is contradicted by another

22   physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons

23   that are supported by substantial evidence" in the record.  *Garrison*, 759 F.3d at 1012; *Reddick v.*

24   *Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This is so because, even when contradicted, a treating

25   or examining physician's opinion is still owed deference and will often be 'entitled to the greatest

26   weight . . . even if it does not meet the test for controlling weight.'"  *Garrison*, 759 F.3d at 1012

27

28

United States District Court
Northern District of California

15

(quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)); SSR 96–2p,[5] 1996 WL 374188, at *4 (July 2, 1996)).  The "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725.  Conclusory statements by the ALJ are insufficient; he "must set forth [his or] her own interpretations and explain why they, rather than the doctors', are correct." *Id.*  An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

## 2.    Analysis

### a.    Drs. Walser and Franklin

The Court finds the ALJ failed to properly evaluate Drs. Walser and Franklin's assessment. First, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting their findings of marked impairment in completing a normal workday and getting to work on a consistent basis.  The ALJ merely stated "I do not see these explained in [their] report or in other treatment notes and do not find these limitations to be consistent with the claimant's testimony about his abilities and independent activities." AR 29.  However, an ALJ may not reject a medical opinion "with boilerplate language that fails to offer a substantive basis for" their conclusion. *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen*, 100 F.3d at 1464); *Petro S. v. Comm'r of Soc. Sec.*, 2020 WL 1062946, at *2 (W.D. Wash. Mar. 5, 2020) (finding error where ALJ stated doctor's opinions were "not consistent with or supported by the longitudinal evidence of record," because "[t]he ALJ's boilerplate language is not a specific enough reason to reject Drs. Walser and Franklin's opinion.").

Second, the ALJ's reliance upon the absence of evidence showing that Plaintiff had limitations in attending work or completing a normal workday "is an assertion that, by definition,

---

[5] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1).  The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health & Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

is not supported by substantial evidence." *Baladad v. Saul*, 2020 WL 1503654, at *13 (N.D. Cal. March 30, 2020) (finding the ALJ's decision to discount opinion based on the absence of evidence "untenable."). Even if this were a sufficient reason, the ALJ failed to consider that most of Plaintiff's treatment occurred during periods of incarceration, where limitations in the ability to maintain regular attendance or complete activities akin to a normal workday would not be explained. Social Security regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(C)(6)(b); *Petro S.*, 2020 WL 1062946, at *2 ("the ability to present oneself in a reasonable manner to a medical provider specifically trained to interact with individuals with mental limitations does not refute a finding that Plaintiff was, for example, markedly limited in his ability to communicate and perform effectively in a normal work setting."). Plaintiff himself explained that his life is manageable when he is incarcerated. AR 892.

Third, although the ALJ stated she did not see Drs. Walser and Franklin explain their assessed limitations, a review of their report shows they explained that Plaintiff experiences frequent disruptions from psychological symptoms, he has longstanding problems following rules and managing impulses, and formal testing showed impairment in memory and attention, behavioral regulation, and perceptual reasoning. AR 893-98. They also noted that he has trouble caring for his basic needs, obtaining treatment, managing money, and living independently. AR 898. These findings could support their assessment that Plaintiff would have difficulty maintaining regular attendance at a job and being punctual, and that he would have marked difficulty completing a normal workday and workweek without interruptions from psychological symptoms. AR 899.

The Court notes that in another section of her decision, the ALJ states that Drs. Walser and Franklin's findings of marked difficulties completing a normal workday and regularly attending work "contrast with the notations from the claimant's treating sources showing normal orientation and appropriate mood and affect[.]" AR 28. The ALJ provides citations to three records that

United States District Court
Northern District of California

purportedly show normal orientation and appropriate mood and affect.  AR 28 (citing AR 923, 958, 989).  The progress note from Plaintiff's general office visit on September 6, 2017 contains a short mental status review that indeed states that Plaintiff was normally oriented with an appropriate mood and affect.  AR 923.  However, the ALJ does not address the progress note from Plaintiff's psychotherapy session at the same clinic on the same day, which states that he exhibited a depressed and anxious mood with a constricted affect, as well as other abnormalities.  AR 919. The progress note from Plaintiff's diabetes check on May 11, 2018 notes, incidentally, that he was fully oriented and had an appropriate mood and affect.  AR 958.  The final record cited is a list of Plaintiff's medications from June 6, 2018, with no findings about Plaintiff's orientation, mood, or affect.  AR 989.  The ALJ fails to explain how these notes contradict the findings of marked difficulties completing an eight-hour workday and maintaining regular attendance.

In sum, the Court finds the ALJ failed to set forth specific, legitimate reasons supported by substantial evidence for partially rejecting the opinion of examining psychologists Dr. Franklin and Dr. Walser.

### b.     State Agency Doctors

In her decision, the ALJ gave "great weight" to the opinions of the state agency consultants at initial and reconsideration because they

> are experts in social security disability evaluation. They are also familiar with our disability programs and their evidentiary requirements, including formulating physical and mental residual functional capacity assessments. Here, they supported their determinations with persuasive rationale based on specific evidence of record, particularly the medical signs and laboratory findings and the opinions of treating and examining sources made available to them.

AR 28.  For claims filed before March 27, 2017, the Administration considers the following factors in evaluating opinion evidence: Relationship; supportability; consistency; specialization; and other factors that tend to support or contradict the opinion, including understanding of disability programs and their evidentiary requirements.  20 C.F.R. § 416.927(c).  The ALJ does not discuss supportability, consistency, or specialization in her explanation.  Instead, as Plaintiff notes, the ALJ provided a generic statement with no explanation about why the state agency

consultants' rationale is persuasive, which evidence supported their determination, or even what their rationale is.  Further, the ALJ mentioned the consultants' purported understanding of disability programs and their evidentiary requirements, but in favoring the opinion of the consultants over the examining psychologists, the ALJ failed to consider the possibility that Drs. Franklin and Walser could be familiar with the disability programs and their evidentiary requirements.  If the consultants' knowledge and understanding of the disability programs' requirements were a sufficient reason to give their opinions great weight, then the non-examining state agency consultants would always be entitled to great weight.  The rules say the opposite – for claims filed before March 27, 2017, treating and examining sources are generally entitled to more weight than non-examining sources.  20 C.F.R. § 416.927(c).  Moreover, as discussed above, the ALJ did not properly evaluate Drs. Franklin and Walser's opinion that Plaintiff had marked impairments, an evaluation which could affect the disability determination.  Accordingly, the Court finds the ALJ failed to support her evaluation of the state agency consultants' opinions.

**D.     Steps Four and Five**

At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a Courtesy Clerk."  AR 29.  Plaintiff argues this finding was made in error because his "past work was neither performed within the past 15 years, nor substantial gainful activity, nor did it last long enough for him to learn how to do it.  Pl.'s Mot. at 22.  As noted above, Social Security regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn it."  20 C.F.R. §§ 404.1560(b)(1), 404.1565(a).  Here, the record reflects that Plaintiff worked as a courtesy clerk at Safeway in 2000 and 2001.  AR 48, 231.  Neither period is within the past 15 years, which the ALJ acknowledged at the hearing.  AR 48 (noting that the courtesy clerk job "was before 15 years ago.").  AR 48.  Thus, the ALJ made this finding in error.

Defendant does not dispute that Plaintiff performed this work more than 15 years ago, but he argues Plaintiff fails to demonstrate harmful legal error because the ALJ made an alternate finding at step five.  Def.'s Mot. at 16.  As an alternative to her step four decision, the ALJ proceeded to step five and found Plaintiff could perform three occupations: Assembler, motor

United States District Court
Northern District of California

19

United States District Court
Northern District of California

vehicles (DOT No. 806.684-010), Day Worker (DOT No. 301.687-014), and Cleaner II (DOT No. 919.687-014).  AR 30.  However, the reasoning for this finding turns in large part on the ALJ's consideration of the medical opinions, which requires reconsideration.  Accordingly, any decision as to the ALJ's step five analysis is premature.

**E.      Plaintiff's Testimony, Listing of Impairments, and RFC**

Plaintiff also argues the ALJ erred by finding his testimony was not consistent with the evidence in the record, his impairments do not meet or equal a listing, and in determining Plaintiff's RFC.  As the reasoning for these findings also turns in large part on the ALJ's consideration of the medical opinions, any decision on these arguments is also premature.

**F.      Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine.  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met.  First, the Court asks, "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1020).  Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful."  *Id.* (citations and internal quotation marks omitted).  Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability."  *Id.* (citing *Treichler*, 775 F.3d at 1101).

It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits."  *Id.* at 1047.  Further, even when all three criteria are met, whether to make a direct award of benefits or remand for

United States District Court
Northern District of California

1    further proceedings is within the district court's discretion.  *Id.* at 1045(citing *Treichler*, 775 F.3d

2    at 1101).  While all three credit-as-true factors may be met, the record as a whole could still leave

3    doubts as to whether the claimant is actually disabled.  *Trevizo*, 871 F.3d at 683 n.11.  In such

4    instances, remand for further development of the record is warranted.  *Id.*

5         Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's

6    disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled.

7    Accordingly, remand for further proceedings is appropriate.  On remand, in addition to the

8    medical opinions, the ALJ shall also determine whether reconsideration of the other issues raised

9    by Plaintiff is required as well.

## VI.    CONCLUSION

11        For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES**

12   Defendant's cross-motion and **REVERSES** the ALJ's decision.  This case is **REMANDED** for

13   further administrative proceedings consistent with this order.  The Court shall enter a separate

14   judgment, after which the Clerk of Court shall terminate the case.

15        **IT IS SO ORDERED.**

17   Dated: October 29, 2020

THOMAS S. HIXSON
United States Magistrate Judge